**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

NHL ENTERPRISES, L.P.,

               Plaintiff,

v.

ZHENGJIANG ZHU, ZHENGHUI YAN,
YOURSJERSEY.COM, WILLIAM SHIVELY,
WILDOFFICIALAUTHENTIC.COM,
WHOLESALEVIPJERSEYSONLINE.COM,
WHOLESALESPORTSSUPPLIESONLINE.COM,
WHOLESALESPORTGEARS.COM,
WHOLESALEJERSEYSTITCHED.COM,
WHOLESALEJERSEYSMARKETS.COM,
WHOLESALEJERSEYSFAN.COM,
WHOLESALEJERSEYSCHINA2018.COM,
WHOLESALEHOCKEYSHOP.COM,
WHOLESALECAP.CLUB,
WHOLESALE2018JERSEYS.COM,
WHATISTIMEBOOK.COM,
WASHINGTONCAPITALSTEAMSHOP.COM,
VIPSPORTSONLINE.COM, VERONICA REESE,
VEEGALETA.COM,
UNDERSPORTSSTORE.COM,
UNDERSPORTSSHOP.COM,
TYROBERTSLIVE.COM, TRISH BARBER,
TOPSOCCERSPORTSSTORE.COM,
TOPCHEAPJERSEYSSUPPLY.COM,
TOPCHEAPFOOTBALLJERSEYS.COM,
TOPBASEBALLSHOP.COM,
THEWILDAUTHORITY.COM,
THESTARSPROSHOP.COM,
THELIGHTNINGHOCKEYSTORE.COM,
THEBLUEJACKETSPROSHOP.COM,
TEAMNHLPANTHERSSHOP.COM,
TEAMNHLHURRICANESSHOP.COM,
TEAMNHLFLAMESSHOP.COM,
TEAMGOLDENKNIGHTSSHOP.COM, T-

Case No. 18-cv-07118

**Judge Robert W. Gettleman**

**Magistrate Judge Maria Valdez**

DELIGHT.COM,
TAMPABAYLIGHTNINGTEAMSHOP.COM,
STYLEJERSEYSCHINA.COM,
STORETEAMBLACKHAWKS.COM,
STLOUISBLUESTEAMSHOPS.COM, STEPHEN
WIELAND, STARSOFFICIALAUTHENTIC.COM,
STARSAUTHORITY.COM,
SPORTSSUPPLIESSTORE.COM,
SPORTSSERIESSTORE.COM,
SPORTSONLINEJERSEYS.COM,
SPORTSONLINEFACTORY.COM,
SPORTSGEARSWHOLESALE.COM,
SHOPWHOLESALEJERSEY.COM,
SHOPTEAMBLUES.COM,
SHOPSTITCHEDJERSEYS.COM,
SHOPNEXTJERSEYS.COM,
SHOPMAPLELEAFSONLINE.COM,
SHOPHOCKEYJERSEYS.COM,
SHARKSOFFICIALAUTHENTICSHOP.COM,
SHARKSAUTHORITY.COM,
SENATORSAUTHORITY.COM,
SEELOOKSALK.COM,
SABRESAUTHORITY.COM,
REDWINGSAUTHORITY.COM, REBECCA
MIDKIFF, RANGERSAUTHORITY.COM,
RALPH BECHTOL,
PREDATORSPLAYERSSHOP.COM,
PREDATORSLOCK.COM,
PREDATORSAUTHORITY.COM,
POLYVOREWHOLESALE.COM,
PNPHBUY.COM,
PITTSBURGHPENGUINSTEAMSHOPS.COM,
PICK-NHL.COM, PENGUINSAUTHORITY.COM,
PAULA WOLF, PAUL PALLISER, PATRICK
OBRIEN, OPAL GOMEZ,
ONLYSPORTSSTYLE.COM,
ONLYHOCKEYSHOP.COM,
ONLYBASKETBALLSTORE.COM,
ONLINESPORTSSERIES.COM,
ONLINEJERSEYSSTYLE.COM,

OILERSNHLSHOP.COM,
OILERSAUTHORITY.COM,
OFFICIALWINNIPEGJETS.COM,
OFFICIALRANGERSPROSHOP.COM,
OFFICIALPREDATORSPROSHOP.COM,
OFFICIALNHLOUTLET.NET,
OFFICIALKINGSPROSHOP.COM,
OFFICIALISLANDERSTEAMSHOP.COM,
OFFICIALDEVILSPROSHOP.COM,
OFFICIALCANADIENSONLINE.COM,
OFFICIALAVALANCHEONLINESHOP.COM,
NHLTOPJERSEYSSTORE.COM,
NHLTEAMREDWINGSSHOP.COM,
NHLSENATORSTEAMSHOP.COM,
NHLSABRESTEAMSHOP.COM,
NHLRANGERSTEAMSHOP.COM,
NHLPRO.CLUB,
NHLPANTHERSTEAMSHOP.COM,
NHLPANTHERSAUTHORITY.COM,
NHLOILERSTEAMSHOP.COM,
NHLKINGSAUTHORITY.COM,
NHLJETSTEAMSHOP.COM,
NHLJETSAUTHORITY.COM,
NHLJERSEYSSTORE.US.COM,
NHLJERSEYSCOM.US.COM,
NHLJERSEYS.US.ORG, NHLJERSEYS.SALE,
NHLJERSEYS.PRO, NHLJERSEYONLINE.SHOP,
NHLJERSEYMART.PRO, NHLJERSEY.NAME,
NHLHURRICANESTEAMSHOP.COM,
NHLHOCKEY-JERSEYS.US.COM,
NHLHOCKEYJERSEY.COM,
NHLHOCKEY.US.COM,
NHLCOYOTESTEAMSHOP.COM,
NHLCAPITALSTEAMSHOP.COM,
NHLCANUCKSTEAMSHOP.COM,
NHLCANADIENSTEAMSHOP.COM,
NHLBUYS.COM,
NHLBRUINSTEAMSHOP.COM,
NHLBLUESAUTHORITY.COM,
NHLBLUEJACKETSTEAMSHOP.COM,

NFLVAL.COM, NFLME.STORE,
NFL4SALES.COM,
NEWYORKRANGERSTEAMONLINE.COM,
NEWJERSEYDEVILSTEAMSTORE.COM,
NEWJERSEYDEVILSTEAMSHOP.COM,
NASHVILLEPREDATORSTEAMSHOP.COM,
MONTREALCANADIENSTEAMSHOPS.COM,
MLBBASEBALLJERSEYSBUY.COM, MINNIE
KEITH, MICHELLE PRUSIA, MICHAEL
NICOLAI, MATTHEW REESE, MARY RAY,
MARY PAGAN, MARSHA CHEEK,
MAPLELEAFSOFFICIALAUTHENTICSHOP.CO
M, MAILLOTDEHOCKEY.COM,
MAGLIEHOCKEY.COM, MAE WOLTERS,
LUCY PARKER, LOOKSALERM.COM,
LIUYUNKUN, LIUDANDAN, LINDA LUTZEN,
LIGHTNINGAUTHORITY.COM,
LEAFSAUTHORITY.COM,
KOSZULKINHL.COM,
KINGSHOCKEYPRO.COM, JOSEPH SEIDEL,
JOSE COLEMAN, JON-MICHAEL BROWN, JOE
BLACK, JIZAI-YA.COM, JINNING LIN,
JERSEYSWHOLESALECHINA2018.COM,
JERSEYSSVIPSHOP.COM,
JERSEYSPROSTORE.COM,  JENNIFER
ZANDER, JENNIFER WILLIAMS, JAMES
ROBERTS, JACLYN WEBSTER,
ISLANDERSTEAMPROSTORE.COM,
ISLANDERSAUTHORITY.COM,
INNERNEWAS.COM, IMTACKSHOW.COM,
IDJERSEYS.COM,
HURRICANESTEAMPROSTORE.COM,
HURRICANESGEARSTORE.COM,
HURRICANESAUTHORITY.COM,
HOCKEYSHARKSPROSHOP.COM,
HOCKEYSENATORSTEAMSHOP.COM,
HOCKEYREDWINGSAUTHENTIC.COM,
HOCKEYPENGUINS.COM,
HOCKEYNHLJERSYS.COM,
HOCKEYNHLJERSEY.COM,

HOCKEYJETSOFFICIALAUTHENTICSHOP.CO
M, HOCKEYGOLDENKNIGHTSSHOP.COM,
HOCKEYFLYERSTEAMSHOP.COM,
HOCKEYDUCKSPROSHOP.COM,
HOCKEYBRUINSPROSHOP.COM,
HOCKEYBLUESTEAMSHOP.COM,
HOCKEYBLACKHAWKSPROSHOP.COM,
HOCKEYAVALANCHETEAMSHOP.COM,
HELEN ALMARAZ, HAZEL MARTIN,
GOLDENKNIGHTSNHLSHOP.COM,
GEORGETTE FLY, GEARVCANUCKS.COM,
GEARSWJETS.COM, GEARSWCAPITALS.COM,
GEARSTMAPLELEAFS.COM,
GEARSTBLIGHTNING.COM,
GEARSSJSHARKS.COM,
GEARSPPENGUINS.COM,
GEARSPFLYERS.COM,
GEARSOFLAKINGS.COM,
GEARSNYRANGERS.COM,
GEARSNYISLANDERS.COM,
GEARSNPREDATORS.COM,
GEARSNJDEVILS.COM, GEARSMWILD.COM,
GEARSLSBLUES.COM, GEARSDSTARS.COM,
GEARSCFLAMES.COM,
GEARSCBLUEJACKETS.COM,
GEARSCBLACKHAWKS.COM,
GEARSBSABRES.COM, GEARSBBRUINS.COM,
GEAROSENATORS.COM,
GEARMCANADIENS.COM,
GEARFPANTHERS.COM, GEAREOILERS.COM,
GEARDREDWINGS.COM,
GEARCHURRICANES.COM,
GEARADUCKS.COM,
FOOTBALLGEARSFAN.COM,
FLYERSAUTHORITY.COM,
FLAMESSTOREGEAR.COM,
FLAMESAUTHORITY.COM,
FERNANDINAFARMERSMARKET.COM,
FAULTATES.COM, EXPEDPUBLISHING.COM,
ERICA VOGT, ENA LIRA,

ELITESPOILERS.COM,
EDMONTONOILERSTEAMSHOPS.COM,
DUODECOSTUDIO.COM,
DUCKSOFFICIALAUTHENTICSHOP.COM,
DUCKSAUTHORITY.COM,
DEVILSAUTHORITY.COM,
DEPARTMENTOFCULTURE.CA, DEMETRIUS
KELLY, CREATENLOOKS.COM,
COYOTESOFFICIALAUTHENTICSHOP.COM,
COYOTESAUTHORITY.COM, COUVREUR-
GARD.COM, COKONLINE.COM, CHRIS HARP,
CHICAGO-BLACKHAWKS.US.COM, CHELSEA
LOGAN, CHELSEA LOGAN (2), CHEE CLOSS,
CHEAPSPORTSGEARS.NET,
CHEAPNHLJERSEYSSTORE.US.COM,
CHEAPNHLJERSEYSS.US.COM, CHEAP-
NFLJERSEY.IN.NET,
CHEAPJESEYSWHOLESALE.COM,
CHEAPJERSEYWHOLESALEACE.COM,
CHEAPJERSEYTOCHINABIZ.COM,
CHEAPJERSEYSWHOLESALESTORE.US.COM,
CHEAPJERSEYSGOOD.US.COM,
CHEAPJERSEYSFAN.US.COM,
CHEAPJERSEYS4WHOLESALE.COM,
CHEAPJERSEYS4WHOLESALE.COM,
CHEAPJERSEYONLINE2018.COM,
CHEAPJERSEYOFFICIALSTORE.COM,
CHEAPFOOTBALLONLINE.COM,
CHEAPFOOTBALLJERSEYSSUPPLY.COM,
CHEAPBESTNFLJERSEYS.US.COM,
CHEAPBASKETBALLSTORE.COM,
CHEAP2018JERSEYS.COM, CHARLES KOH,
CHANEL MARTIN, CHANDAN,
CAPITALSAUTHORITY.COM,
CANUCKSOFFICIALAUTHENTICSHOP.COM,
CANUCKSAUTHORITY.COM,
CANUCKSAPPARELSHOP.COM,
CANADIENSAUTHORITY.COM,
BRUINSNHLSHOP.COM, BRUINSGOODS.COM,
BRUINSAUTHORITY.COM, BRIAN BYRD,

BLUEJACKETSAUTHORITY.COM,
BLACKHAWKSJERSEY.US.COM,
BLACKHAWKSAUTHORITY.COM, BEVERLY
RIVARD, BERNARD GALICIA,
AVALANCHEAUTHORITY.COM,
AUTHENTICSANJOSESHARKSSHOP.COM,
AUTHENTICHOCKEYSHOPWILD.COM,
AUTHENTICHOCKEYSHOPSABRES.COM,
AUTHENTICHOCKEYSHOPLIGHTNING.COM,
AUTHENTICHOCKEYSHOPISLANDERS.COM,
AUTHENTICHOCKEYSHOPDEVILS.COM,
AUTHENTICHOCKEYSHOPCAPITALS.COM,
AUTHENTICHOCKEYSHOPCANUCKS.COM,
AUTHENTICHOCKEYRANGERSOFFICIAL.CO
M, ATTENTIONEE.COM, ANDREW JOSEPH,
ALLSPORTSSTYLESTORE.COM,
AGRIPORTTERMINAL.COM,
2018NFLJERSEYCHEAP.COM,
2018LIGHTJERSEYS.INFO,
2018HOCKEYS.COM, 2018CHEAPNFL.COM,
2018ACT.COM, 2CN1234, FLFJ6101,
MOONBIRDRING-0, and XIAOYOU328586_9,

Defendants.

**SECOND AMENDED COMPLAINT**

Plaintiff NHL Enterprises, L.P. ("NHLE" or "Plaintiff"), hereby brings the present action

against ZHENGJIANG ZHU, ZHENGHUI YAN, YOURSJERSEY.COM, WILLIAM

SHIVELY, WILDOFFICIALAUTHENTIC.COM, WHOLESALEVIPJERSEYSONLINE.COM,

WHOLESALESPORTSSUPPLIESONLINE.COM, WHOLESALESPORTGEARS.COM,

WHOLESALEJERSEYSTITCHED.COM, WHOLESALEJERSEYSMARKETS.COM,

WHOLESALEJERSEYSFAN.COM, WHOLESALEJERSEYSCHINA2018.COM,

WHOLESALEHOCKEYSHOP.COM, WHOLESALECAP.CLUB,

WHOLESALE2018JERSEYS.COM, WHATISTIMEBOOK.COM,

7

WASHINGTONCAPITALSTEAMSHOP.COM, VIPSPORTSONLINE.COM, VERONICA REESE, VEEGALETA.COM, UNDERSPORTSSTORE.COM, UNDERSPORTSSHOP.COM, TYROBERTSLIVE.COM, TRISH BARBER, TOPSOCCERSPORTSSTORE.COM, TOPCHEAPJERSEYSSUPPLY.COM, TOPCHEAPFOOTBALLJERSEYS.COM, TOPBASEBALLSHOP.COM, THEWILDAUTHORITY.COM, THESTARSPROSHOP.COM, THELIGHTNINGHOCKEYSTORE.COM, THEBLUEJACKETSPROSHOP.COM, TEAMNHLPANTHERSSHOP.COM, TEAMNHLHURRICANESSHOP.COM, TEAMNHLFLAMESSHOP.COM, TEAMGOLDENKNIGHTSSHOP.COM, T-DELIGHT.COM, TAMPABAYLIGHTNINGTEAMSHOP.COM, STYLEJERSEYSCHINA.COM, STORETEAMBLACKHAWKS.COM, STLOUISBLUESTEAMSHOPS.COM, STEPHEN WIELAND, STARSOFFICIALAUTHENTIC.COM, STARSAUTHORITY.COM, SPORTSSUPPLIESSTORE.COM, SPORTSSERIESSTORE.COM, SPORTSONLINEJERSEYS.COM, SPORTSONLINEFACTORY.COM, SPORTSGEARSWHOLESALE.COM, SHOPWHOLESALEJERSEY.COM, SHOPTEAMBLUES.COM, SHOPSTITCHEDJERSEYS.COM, SHOPNEXTJERSEYS.COM, SHOPMAPLELEAFSONLINE.COM, SHOPHOCKEYJERSEYS.COM, SHARKSOFFICIALAUTHENTICSHOP.COM, SHARKSAUTHORITY.COM, SENATORSAUTHORITY.COM, SEELOOKSALK.COM, SABRESAUTHORITY.COM, REDWINGSAUTHORITY.COM, REBECCA MIDKIFF, RANGERSAUTHORITY.COM, RALPH BECHTOL, PREDATORSPLAYERSSHOP.COM, PREDATORSLOCK.COM, PREDATORSAUTHORITY.COM, POLYVOREWHOLESALE.COM, PNPHBUY.COM, PITTSBURGHPENGUINSTEAMSHOPS.COM, PICK-NHL.COM,

PENGUINSAUTHORITY.COM, PAULA WOLF, PAUL PALLISER, PATRICK OBRIEN, OPAL GOMEZ, ONLYSPORTSSTYLE.COM, ONLYHOCKEYSHOP.COM, ONLYBASKETBALLSTORE.COM, ONLINESPORTSSERIES.COM, ONLINEJERSEYSSTYLE.COM, OILERSNHLSHOP.COM, OILERSAUTHORITY.COM, OFFICIALWINNIPEGJETS.COM, OFFICIALRANGERSPROSHOP.COM, OFFICIALPREDATORSPROSHOP.COM, OFFICIALNHLOUTLET.NET, OFFICIALKINGSPROSHOP.COM, OFFICIALISLANDERSTEAMSHOP.COM, OFFICIALDEVILSPROSHOP.COM, OFFICIALCANADIENSONLINE.COM, OFFICIALAVALANCHEONLINESHOP.COM, NHLTOPJERSEYSSTORE.COM, NHLTEAMREDWINGSSHOP.COM, NHLSENATORSTEAMSHOP.COM, NHLSABRESTEAMSHOP.COM, NHLRANGERSTEAMSHOP.COM, NHLPRO.CLUB, NHLPANTHERSTEAMSHOP.COM, NHLPANTHERSAUTHORITY.COM, NHLOILERSTEAMSHOP.COM, NHLKINGSAUTHORITY.COM, NHLJETSTEAMSHOP.COM, NHLJETSAUTHORITY.COM, NHLJERSEYSSTORE.US.COM, NHLJERSEYSCOM.US.COM, NHLJERSEYS.US.ORG, NHLJERSEYS.SALE, NHLJERSEYS.PRO, NHLJERSEYONLINE.SHOP, NHLJERSEYMART.PRO, NHLJERSEY.NAME, NHLHURRICANESTEAMSHOP.COM, NHLHOCKEY-JERSEYS.US.COM, NHLHOCKEYJERSEY.COM, NHLHOCKEY.US.COM, NHLCOYOTESTEAMSHOP.COM, NHLCAPITALSTEAMSHOP.COM, NHLCANUCKSTEAMSHOP.COM, NHLCANADIENSTEAMSHOP.COM, NHLBUYS.COM, NHLBRUINSTEAMSHOP.COM, NHLBLUESAUTHORITY.COM, NHLBLUEJACKETSTEAMSHOP.COM, NFLVAL.COM, NFLME.STORE, NFL4SALES.COM, NEWYORKRANGERSTEAMONLINE.COM,

NEWJERSEYDEVILSTEAMSTORE.COM, NEWJERSEYDEVILSTEAMSHOP.COM, NASHVILLEPREDATORSTEAMSHOP.COM, MONTREALCANADIENSTEAMSHOPS.COM, MLBBASEBALLJERSEYSBUY.COM, MINNIE KEITH, MICHELLE PRUSIA, MICHAEL NICOLAI, MATTHEW REESE, MARY RAY, MARY PAGAN, MARSHA CHEEK, MAPLELEAFSOFFICIALAUTHENTICSHOP.COM, MAILLOTDEHOCKEY.COM, MAGLIEHOCKEY.COM, MAE WOLTERS, LUCY PARKER, LOOKSALERM.COM, LIUYUNKUN, LIUDANDAN, LINDA LUTZEN, LIGHTNINGAUTHORITY.COM, LEAFSAUTHORITY.COM, KOSZULKINHL.COM, KINGSHOCKEYPRO.COM, JOSEPH SEIDEL, JOSE COLEMAN, JON-MICHAEL BROWN, JOE BLACK, JIZAI-YA.COM, JINNING LIN, JERSEYSWHOLESALECHINA2018.COM, JERSEYSSVIPSHOP.COM, JERSEYSPROSTORE.COM, JENNIFER ZANDER, JENNIFER WILLIAMS, JAMES ROBERTS, JACLYN WEBSTER, ISLANDERSTEAMPROSTORE.COM, ISLANDERSAUTHORITY.COM, INNERNEWAS.COM, IMTACKSHOW.COM, IDJERSEYS.COM, HURRICANESTEAMPROSTORE.COM, HURRICANESGEARSTORE.COM, HURRICANESAUTHORITY.COM, HOCKEYSHARKSPROSHOP.COM, HOCKEYSENATORSTEAMSHOP.COM, HOCKEYREDWINGSAUTHENTIC.COM, HOCKEYPENGUINS.COM, HOCKEYNHLJERSYS.COM, HOCKEYNHLJERSEY.COM, HOCKEYJETSOFFICIALAUTHENTICSHOP.COM, HOCKEYGOLDENKNIGHTSSHOP.COM, HOCKEYFLYERSTEAMSHOP.COM, HOCKEYDUCKSPROSHOP.COM, HOCKEYBRUINSPROSHOP.COM, HOCKEYBLUESTEAMSHOP.COM, HOCKEYBLACKHAWKSPROSHOP.COM,

10

HOCKEYAVALANCHETEAMSHOP.COM, HELEN ALMARAZ, HAZEL MARTIN, GOLDENKNIGHTSNHLSHOP.COM, GEORGETTE FLY, GEARVCANUCKS.COM, GEARSWJETS.COM, GEARSWCAPITALS.COM, GEARSTMAPLELEAFS.COM, GEARSTBLIGHTNING.COM, GEARSSJSHARKS.COM, GEARSPPENGUINS.COM, GEARSPFLYERS.COM, GEARSOFLAKINGS.COM, GEARSNYRANGERS.COM, GEARSNYISLANDERS.COM, GEARSNPREDATORS.COM, GEARSNJDEVILS.COM, GEARSMWILD.COM, GEARSLSBLUES.COM, GEARSDSTARS.COM, GEARSCFLAMES.COM, GEARSCBLUEJACKETS.COM, GEARSCBLACKHAWKS.COM, GEARSBSABRES.COM, GEARSBBRUINS.COM, GEAROSENATORS.COM, GEARMCANADIENS.COM, GEARFPANTHERS.COM, GEAREOILERS.COM, GEARDREDWINGS.COM, GEARCHURRICANES.COM, GEARADUCKS.COM, FOOTBALLGEARSFAN.COM, FLYERSAUTHORITY.COM, FLAMESSTOREGEAR.COM, FLAMESAUTHORITY.COM, FERNANDINAFARMERSMARKET.COM, FAULTATES.COM, EXPEDPUBLISHING.COM, ERICA VOGT, ENA LIRA, ELITESPOILERS.COM, EDMONTONOILERSTEAMSHOPS.COM, DUODECOSTUDIO.COM, DUCKSOFFICIALAUTHENTICSHOP.COM, DUCKSAUTHORITY.COM, DEVILSAUTHORITY.COM, DEPARTMENTOFCULTURE.CA, DEMETRIUS KELLY, CREATENLOOKS.COM, COYOTESOFFICIALAUTHENTICSHOP.COM, COYOTESAUTHORITY.COM, COUVREUR-GARD.COM, COKONLINE.COM, CHRIS HARP, CHICAGO-BLACKHAWKS.US.COM, CHELSEA LOGAN, CHELSEA LOGAN (2), CHEE CLOSS, CHEAPSPORTSGEARS.NET, CHEAPNHLJERSEYSSTORE.US.COM, CHEAPNHLJERSEYSS.US.COM, CHEAP-NFLJERSEY.IN.NET,

CHEAPJESEYSWHOLESALE.COM, CHEAPJERSEYWHOLESALEACE.COM, CHEAPJERSEYTOCHINABIZ.COM, CHEAPJERSEYSWHOLESALESTORE.US.COM, CHEAPJERSEYSGOOD.US.COM, CHEAPJERSEYSFAN.US.COM, CHEAPJERSEYS4WHOLESALE.COM, CHEAPJERSEYS4WHOLESALE.COM, CHEAPJERSEYONLINE2018.COM, CHEAPJERSEYOFFICIALSTORE.COM, CHEAPFOOTBALLONLINE.COM, CHEAPFOOTBALLJERSEYSSUPPLY.COM, CHEAPBESTNFLJERSEYS.US.COM, CHEAPBASKETBALLSTORE.COM, CHEAP2018JERSEYS.COM, CHARLES KOH, CHANEL MARTIN, CHANDAN, CAPITALSAUTHORITY.COM, CANUCKSOFFICIALAUTHENTICSHOP.COM, CANUCKSAUTHORITY.COM, CANUCKSAPPARELSHOP.COM, CANADIENSAUTHORITY.COM, BRUINSNHLSHOP.COM, BRUINSGOODS.COM, BRUINSAUTHORITY.COM, BRIAN BYRD, BLUEJACKETSAUTHORITY.COM, BLACKHAWKSJERSEY.US.COM, BLACKHAWKSAUTHORITY.COM, BEVERLY RIVARD, BERNARD GALICIA, AVALANCHEAUTHORITY.COM, AUTHENTICSANJOSESHARKSSHOP.COM, AUTHENTICHOCKEYSHOPWILD.COM, AUTHENTICHOCKEYSHOPSABRES.COM, AUTHENTICHOCKEYSHOPLIGHTNING.COM, AUTHENTICHOCKEYSHOPISLANDERS.COM, AUTHENTICHOCKEYSHOPDEVILS.COM, AUTHENTICHOCKEYSHOPCAPITALS.COM, AUTHENTICHOCKEYSHOPCANUCKS.COM, AUTHENTICHOCKEYRANGERSOFFICIAL.COM, ATTENTIONEE.COM, ANDREW JOSEPH, ALLSPORTSSTYLESTORE.COM, AGRIPORTTERMINAL.COM,

12

2018NFLJERSEYCHEAP.COM, 2018LIGHTJERSEYS.INFO, 2018HOCKEYS.COM, 2018CHEAPNFL.COM, 2018ACT.COM, 2CN1234, FLFJ6101, MOONBIRDRING-0, and XIAOYOU328586_9, identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Internet stores operating under the Defendant Domain Names and/or the Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase unlicensed counterfeit products using Plaintiff's trademarks. Each of the Defendants targets sales from Illinois residents by operating online stores that offer for sale unlicensed counterfeit products using one or more of Plaintiff's trademarks to residents of Illinois, offer shipping to the United States, including Illinois, accept payment in U.S. dollars, and on information and belief, has sold and continues to sell products

using counterfeit versions of Plaintiff's trademarks. In fact, the commercial nature of the Defendant Internet Stores and Defendants' intent to sell to Illinois residents is further confirmed by purchases that have been ordered from a sampling of the Defendant Internet Stores. Accordingly, each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3.     This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit products using counterfeits of one or more of the trademarks owned and/or licensed by the Plaintiff (the "Counterfeit Products"). Defendants create the Defendant Internet Stores by the thousands and design them to appear to be selling licensed products featuring one or more of the trademarks owned and/or licensed by Plaintiff, while, upon information and belief, actually selling Counterfeit Products to unknowing consumers who make purchases from the Defendant Internet Stores. The Defendant Internet Stores share unique identifiers, such as design elements of and/or similarities to the counterfeit products offered for sale, establishing a logical relationship among them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file these actions to combat Defendants' counterfeiting of the trademarks owned or licensed by Plaintiff, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Plaintiff has been irreparably harmed and continues to be irreparably

14

damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

### III. THE PARTIES

**NHL Enterprises L.P.**

4.      Plaintiff NHLE is a Delaware limited partnership having a principal place of business at 1185 Avenue of the Americas, New York, New York.

5.      The National Hockey League ("NHL") is an unincorporated association organized as a joint venture to operate a professional ice hockey league consisting of thirty-one (31) member clubs (the "NHL Teams"), including the 2015 Stanley Cup Champion Chicago Blackhawks.  The NHL has existed since 1917 and has consistently attracted a large public following, both in the United States and worldwide.

6.       NHLE is the exclusive national United States licensee of the famous and distinctive trademarks of the NHL (including names, logos, symbols, emblems, uniform designs, uniform trade dress colors, and other identifying indicia associated with the NHL) ("NHL League Trademarks"), and is authorized by the NHL to enforce the rights in the NHL League Trademarks.  In addition, NHLE is the exclusive national United States licensee of the famous and distinctive trademarks of the NHL Teams collectively (including names, logos, symbols, emblems, uniform designs, uniform trade dress colors, and other identifying indicia associated with the NHL Teams) ("NHL Team Trademarks," and, together with the "NHL League Trademarks," the "NHL Trademarks").  NHLE is authorized by the NHL Teams to enforce the rights in the NHL Team Trademarks.  The NHL Trademarks include, but are not limited to, those that are the subject of valid and subsisting trademark registrations on the Principal Register of the United States Patent and Trademark Office and those that the NHL and the NHL Teams have

adopted and used in commerce throughout the United States, including in Illinois. In particular, NHLE is the exclusive United States licensee of and is authorized to enforce over one hundred (100) United States federal trademark registrations for NHL League Trademarks in a variety of classes and for a variety of different goods and services, including, without limitation, for apparel such as jerseys, shirts, caps, and other products in international class 25. Among the NHL League Trademarks are the word mark "NHL" (reg. no. 1,962,135) and the NHL Logo:

 (reg. no. 3,248,499). A non-exhaustive list of the NHL League Trademarks, registered with the United States Patent and Trademark Office and currently in use in commerce, includes the following:

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 1,962,135 | NHL | For: clothing, namely, shirts, jerseys, sweaters, jackets, sweatshirts, t-shirts, pants, sweatpants, warm-up suits, wristbands, headbands, shorts, caps, hats, socks, nightshirts, scarves, mittens and cloth bibs in class 025. |
| 2,422,903 | STANLEY CUP | For: clothing, namely, caps, cloth bibs, hats, jackets, jerseys, shirts, shorts, sweaters, sweatpants, sweatshirts, t-shirts, ties, vests and warm-up suits in class 025. |
| 4,631,182 | NHL | For: items made of precious and non-precious metals, namely, commemorative coins, and medals; trophies and key chains made of precious metals; jewelry, charms, earrings, medallions, rings, necklaces, tie tacks, pins in the nature of jewelry; chronometric instruments in the nature of docks and clocks in class 014. |
| 4,767,415 | STANLEY CUP | For: precious metal trophies in class 014. |

| | | |
|---|---|---|
| 1,678,612 |  | For: clothing and footwear; namely, jerseys, sweaters, jackets, sweatshirts, t-shirts, sweatpants, shirts, caps, hats in class 025. |
| 3,248,499 |  | For: clothing, namely, bandannas, beach cover-ups, belts, body suits, boxer shorts, caps, cloth bibs, coats, dresses, footwear, ear muffs, gloves, hats, headbands, hosiery, housecoats, jackets, jerseys, leggings, leotards, mittens, nightshirts, pajamas, pants, rain coats, rain wear, robes, scarves, shirts, shorts, skirts, socks, suits, sun visors, suspenders, sweaters, sweatpants, sweatshirts, swimsuits, swim trunks, t-shirts, ties, toques, underwear, vests, warm-up suits and wristbands in class 025. |
| 5,165,350 |  | For: items made of precious and non-precious metals, namely, commemorative coins, and medals; trophies and key chains made of precious metals; jewelry, charms, earrings, medallions, rings, necklaces, tie tacks, pins in the nature of jewelry; chronometric instruments in the nature of docks and clocks in class 014. |
| 2,395,418 |  | For: clothing, namely, caps, cloth bibs, hats, jackets, jerseys, shirts, shorts, sweaters, sweatpants, sweatshirts, t-shirts, ties, vests and warm-up suits in class 025. |
| 4,677,429 |  | For: Items made of precious and non-precious metals, namely, commemorative coins, and medals; key chains made of precious metals; jewelry, charms, earrings, medallions, rings, necklaces, tie tacks, pins in the nature of jewelry; chronometric instruments in the nature of docks and clocks in class 014. |

The above U.S. registrations for the NHL League Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the NHL League Trademarks constitute *prima facie* evidence of their validity and of NHLE's exclusive right to use the NHL Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct

copies of the Federal Trademark Registrations for the above NHL League Trademarks are attached hereto as **Exhibit 1**.

7.      The NHL brand of professional hockey and NHL Trademarks are widely known to and enormously popular with both sports fans and the general public.  NHLE has promoted and advertised the NHL, the NHL Teams and NHL Trademarks extensively for many years. NHL Trademarks are among the most renowned and immediately recognizable marks in professional sports today.  As a result of substantial advertising, promotion and media attention, and NHLE's extensive licensing and sponsorship program for a wide variety of goods and services, NHL Trademarks have acquired secondary meaning and represent significant goodwill of great value to the NHL, NHLE and the NHL Teams.

8.      Millions of fans have attended NHL games and related events, enjoyed television and radio broadcasts of NHL games and related events, and purchased merchandise bearing NHL Trademarks to identify with their favorite NHL Teams.  Millions visit <NHL.com>, the official NHL website, as well as the official websites of the individual NHL Teams, which prominently display, and in many cases are accessed by domain names containing, NHL Trademarks.

9.      A significant aspect of NHLE's business and resulting revenues has been for many years, and continues to be, the merchandising and licensing of the NHL Trademarks. NHLE has entered into numerous licensing agreements in the United States, authorizing use of NHL Trademarks on a wide variety of products, including apparel, caps, jewelry, toys, furniture, pennants, and bags, among others (collectively, "NHL Products").   Retail sales revenue in 2017 of NHL Products was in the hundreds of millions of dollars.

10. NHLE, directly and through authorized licensees, has established and maintained high standards of quality for NHL Products, and continues to maintain stringent quality control over licensees and other authorized users of NHL Trademarks.

11. In supervising licensees, NHLE provides licensees and licensed product manufacturers with specifications setting forth extensive details with respect to use of NHL Trademarks, including typeface and typography, color renderings, official uniform scripts, graphic designs, materials, workmanship, and quality. All NHL Products are reviewed under these strict quality control procedures.

12. As a result of the extensive use of NHL Trademarks, not only in connection with the NHL's well-known hockey games and related events, but also in connection with a wide variety of licensed merchandise sold and/or rendered in the United States and abroad, as well as widespread use in connection with a broad array of sponsorship activities spanning diverse industries, such trademarks have for many decades, and long prior to any use made by Defendants, functioned as unique identifiers and synonyms in the public mind for NHLE, the NHL, and the NHL Teams. As a result, NHL Trademarks are famous and possess significant goodwill of great value to the NHL, the NHL Teams and NHLE.

13. To protect NHL Trademarks from infringement, dilution, disparagement, and misappropriation, NHLE, in collaboration with CAPS, has established a comprehensive program of trademark protection, including regularly investigating suspicious websites identified in proactive Internet sweeps and reported by consumers.

14. The NHL Trademarks are hereinafter collectively referred to as the "Plaintiff's Trademarks."

**The Defendants**

15.     Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions.  Defendants conduct business throughout the United States, including within the State of Illinois and this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores.  Each Defendant targets the United States, including Illinois, and has offered to sell Counterfeit Products to consumers within the United States, including the State of Illinois.

16.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products using counterfeit versions of many of Plaintiff's Trademarks in the same transaction, occurrence, or series of transactions or occurrences.  Tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network.   In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Second Amended Complaint.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

17.     The fame of Plaintiff's Trademarks and the success of Plaintiff's athletic brand and affiliated variety of products, including apparel, caps, jewelry, toys, furniture, pennants, and bags, among others (collectively, "Plaintiff's Genuine Products"), has resulted in significant counterfeiting of the trademarks owned and/or licensed by Plaintiff.  Trademark Management LLC ("TML") administers Coalition to Advance the Protection of Sports logos ("CAPS") on

behalf of its members, NHLE, Major League Baseball Properties, Inc., NBA Properties, Inc., IMG College Licensing, LLC and NFL Properties, LLC. CAPS has created an extensive anti-counterfeiting program, which includes regularly investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by a variety of informants in response to the significant counterfeiting of Plaintiff's Trademarks. In recent years, CAPS, on behalf of its above-identified members, has identified thousands of domain names linked to fully interactive, commercial websites and marketplace listings on platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, including the Defendant Internet Stores, which were offering for sale and selling Counterfeit Products to consumers in this Judicial District and throughout the United States. Despite Plaintiff's and CAPS' collective enforcement efforts, Defendants have persisted in creating the Defendant Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2014 was over $1.23 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

18. Defendants facilitate sales of Counterfeit Products by designing the Defendant Internet Stores so that they appear to unknowing consumers to be legitimate online retailers, outlet stores, or wholesalers. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and PayPal. The Defendant Internet Stores often include content and design elements that make it

very difficult for consumers to distinguish such counterfeit sites from a legitimate retailer selling Plaintiff's Genuine Products. Many Defendants further perpetuate the illusion of legitimacy on the Defendant Internet Stores by falsely alleging to offer customer service and making unauthorized use of indicia of authenticity and security that U.S. consumers have come to associate with legitimate retailers, including the Visa®, MasterCard®, and/or PayPal® logos. Upon information and belief, Plaintiff has not licensed or authorized Defendants to use any of Plaintiff's Trademarks, and, upon information and belief, none of the Defendants are legitimate retailers of any of Plaintiff's Genuine Products.

19. Upon information and belief, many Defendants also deceive unknowing consumers by using one or more of Plaintiff's Trademarks without authorization within the content, text, and/or meta-tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for one or more of Plaintiff's Genuine Products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for one or more of Plaintiff's Genuine Products. Other Defendants only show Plaintiff's Trademarks in product images while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiff's Genuine Products.

20. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendant Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states.

Other Defendant Domain Names use privacy services that conceal the owners' identity and contact information. On information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Second Amended Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

21.     Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. For example, many of the Defendant websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, the Counterfeit Products for sale in many of the Defendant Internet Stores bear the same or similar irregularities and/or indicia that identifies them as being counterfeit, suggesting that the Counterfeit Products were manufactured by and/or obtained from a common source and that Defendants are interrelated. The Defendant Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, and similar name servers.

22.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive

notice of a lawsuit. Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection.

23. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

24. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use one or more of Plaintiff's Trademarks in connection with the advertisement, distribution, offering for sale, and/or sale of the Counterfeit Products into the United States and Illinois over the Internet. Each Defendant Internet Store offers Counterfeit Products for sale to residents of the United States, including Illinois, and offers shipping of Counterfeit Products to the United States, including Illinois.

25. Defendants' use of one or more of Plaintiff's Trademarks in connection with the advertising, distribution, offering for sale and/or sale of Counterfeit Products, including to residents of Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

26.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 25.

27.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit or infringing imitations of one or more of Plaintiff's Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.  Plaintiff's Trademarks are highly distinctive marks.  Consumers have come to expect the highest quality from Plaintiff's products sold or marketed under Plaintiff's Trademarks.

28.     Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products using counterfeit or infringing reproductions of one or more of Plaintiff's Trademarks without Plaintiff's permission or consent.

29.     Plaintiff is the exclusive licensee of the Plaintiff's Trademarks.  The U.S. Registrations for Plaintiff's Trademark (Exhibits 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's Trademarks, and are willfully infringing and intentionally using counterfeits or infringements of one or more of Plaintiff's Trademarks.  Defendants' willful, intentional and unauthorized use of one or more of Plaintiff's Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit or infringing goods among the general public.

30.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to their reputation and the goodwill of their well-known Plaintiff's Trademarks.

32. The injuries and damages sustained by Plaintiff have been directly and/or proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and/or sale of the Counterfeit Products.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

33. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 32.

34. Defendants' promotion, marketing, offering for sale, and/or sale of the Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

35. By using one or more of Plaintiff's Trademarks on the Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

36. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of Plaintiff and the Plaintiff's Trademarks.

## COUNT III
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510, *et seq.*)

38.     Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 37.

39.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their Counterfeit Products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with one or more of the Plaintiff's Genuine Products, representing that their products have any or all of Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

40.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.*

41.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and the goodwill of Plaintiff and the Plaintiff's Trademarks.  Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

a. using any of Plaintiff's Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, promotion, marketing, advertising, offering for sale, or sale of any product that is not one of Plaintiff's Genuine Products or is not authorized by Plaintiff to be sold in connection with Plaintiff's Trademarks;

b. passing off, inducing, or enabling others to sell or pass off any products as Plaintiff's Genuine Products or any other products produced by Plaintiff that are not Plaintiff's, or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing Plaintiff's Trademarks and damaging Plaintiff's goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the Plaintiff's Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, at Plaintiff's choosing, the registrant of the Defendant Domain Names shall be changed from the current registrant to Plaintiff, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and

change the registrar of record for the Defendant Domain Names to a registrar of Plaintiff's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Plaintiff's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing, and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

    a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using Plaintiff's Trademarks;

    b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using Plaintiff's Trademarks; and

    c. take all steps necessary to prevent links to the Defendant Domain Names identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

4) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged and that the amount of damages for infringement of Plaintiff's Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Plaintiff be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's Trademarks;

6) That Plaintiff be awarded their reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 29th day of October 2018.    Respectfully submitted,


/s/ Justin R. Gaudio_____
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Attorneys for Plaintiff*
*NHL Enterprises, L.P.*